Richard B. FRIEDLER, Plaintiff–Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant–Appellee.

No. 02–3800.

United States Court of Appeals, Sixth Circuit.

Dec. 24, 2003.

John L. Cullen, Daniel J. Nealon, Gibbons & Cullen, Timothy R. Sterkel, Cleveland, OH, for Plaintiff–Appellant.

Steven J. Miller, Kimberly Y. Smith, Goodman, Weiss & Miller, Cleveland, OH, for Defendant–Appellee.

Before GUY and GILMAN, Circuit Judges; and REEVES, District Judge.*

## OPINION

GILMAN, Circuit Judge.

In 2001, Richard Friedler sued The Equitable Life Assurance Society for allegedly defamatory information that it filed with the National Association of Securities Dealers (NASD) in 1990, which was subsequently transmitted by NASD to a prospective employer ten years later. Because Friedler's defamation claim was clearly barred by the one-year statute of limitations under Ohio's "first publication" rule, we **AFFIRM** the judgment of the district court dismissing Friedler's lawsuit for failure to state a claim upon which relief can be granted. We also **AFFIRM** the district court's award of Rule 11 sanctions against Friedler's counsel, but **DENY** Equitable's motion for additional sanctions relating to this appeal.

* The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

### A. Factual background

Friedler was an employee of Equitable until he was terminated on February 28, 1989. After he was fired, Equitable filed an Uniform Termination Notice for Securities Regulation, known as a U–5, with NASD. On March 12, 1990, Equitable filed an amended U–5 with NASD that disclosed the following information:

Richard Friedler was terminated on 2/28/89 when the firm determined when he was employed by Prudential–Bache, that he presented another Paine Webber employee's commission run, representing the run to be his own. Based on that commission run, Prudential–Bache provided "transitional compensation" to him in the amount of $100,000. He was terminated for fraudulently inducing Pru–Bache to employ and compensate him.

Friedler's defamation claim is based upon his allegation that he never worked for either Prudential Bache or Paine Webber. More than ten years later, on November 28, 2000, NASD provided Equitable's 1990 statement to Allstate Financial Services. Because of this allegedly defamatory statement. Friedler contends that he has been unable to obtain a securities license and that his professional reputation has been damaged.

### B. Procedural background

Friedler sued Equitable for defamation in the Cuyahoga County Court of Common Pleas on June 1, 2001. Ohio Revised Code § 2305.11(A) provides that "[a]n action for libel ... shall be commenced within one year after the cause of action accrued...." Arguing that the statute of limitations began to run against Equitable when it submitted the amended U–5 to NASD in 1990, Equitable moved to dismiss Friedler's claim as time-barred.

In December of 2001, the Ohio court denied Equitable's motion to dismiss and granted Friedler's motion for leave to amend his complaint to include NASD as a defendant. Friedler then filed an amended complaint against both Equitable and NASD. NASD subsequently removed the case to the United States District Court for the Northern District of Ohio based upon the federal question presented under the Securities Exchange Act of 1934, 15 U.S.C. § 78a–78jj.

The amended complaint filed in federal court set forth five causes of action. Counts One and Two alleged, respectively, that Equitable defamed, and intentionally defamed, Friedler. Friedler also alleged the same causes of action against NASD in Counts Three and Four. Finally, Count Five alleged that NASD breached its duties related to the maintenance of regulatory filings within NASD's Central Registration Depository.

Friedler subsequently dismissed his causes of action against NASD, leaving Equitable as the sole defendant. Equitable again moved for dismissal on statute-of-limitations grounds and sought sanctions against Friedler's counsel for continuing to pursue a clearly time-barred cause of action. The district court granted Equitable's motion to dismiss and its request for sanctions. Friedler's counsel then moved to file a supplemental response, claiming that he had not had enough time to conduct legal research and that he had recently unearthed two additional cases that would support his theory that Friedler's complaint was timely filed. The district court refused to allow Friedler to file a supplemental response because Friedler's counsel had had ample time to research the applicable law since first filing suit in state court. Moreover, the district court had given Friedler two ex-

tensions to file his response to Equitable's motion to dismiss.

Friedler timely filed an appeal of the district court's decision to dismiss his defamation case against Equitable. He also appeals the district court's award of $7,266.85 in sanctions against his counsel under Rule 11 of the Federal Rules of Civil Procedure. Equitable, on the other hand, requests that we further sanction Friedler and/or his counsel for filing an allegedly frivolous appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure.

## II. ANALYSIS

### A. Friedler failed to state a claim upon which relief can be granted

#### 1. Standard of review

Friedler's complaint was dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the district court determined that Friedler had failed to state a claim upon which relief can be granted. We conduct a de novo review of a dismissal under Rule 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001). In reviewing the motion, we "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitled him to relief." *Id.* at 512. But we "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

#### 2. Friedler's claim is barred by the statute of limitations

█ Under Ohio law, "[a]n action for libel [or] slander ... shall be commenced within one year after the cause of action accrued...." Ohio Revised Code § 2305.11(A). "[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Sabouri v. Ohio Dep't of Job & Family Servs.*, 145 Ohio App.3d 651, 763 N.E.2d 1238, 1240–41 (2001) (internal citation omitted). In the present case, Equitable published the amended U–5 with the allegedly defamatory statements to NASD on March 12, 1990. Friedler filed his lawsuit against Equitable on June 1, 2001, more than ten years after the one-year statute of limitations had expired. His claim is thus time-barred.

But Friedler argued below that the defamatory material was "first published" on November 28, 2000, when NASD provided Equitable's U–5 to Allstate. There is no evidence, however, that Equitable was responsible for the transmittal of the information from NASD to Allstate on that date. The district court correctly noted that there is nothing in the record to support a claim that Equitable engaged in any relevant conduct after March 12, 1990, and Equitable is not liable under Ohio law for NASD's action on November 28, 2000. Because Friedler's cause of action against Equitable is barred by the Ohio statute of limitations, the district court properly dismissed the case for failure to state a claim upon which relief can be granted.

#### 3. Friedler's republication theory

Friedler argues for the first time on appeal that each transmission of defamatory information constitutes a new publication. Under this theory, the original source of the defamatory statements is liable each time the information is republished to a new party. Friedler relies on the following three cases for this proposition: *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 449 (5th Cir.1988) (holding that for purposes of

the Fair Credit Reporting Act, if erroneous information is on file with a credit agency, the statute of limitations starts on the date that the information is transmitted to a new user); *Schneider v. United Airlines, Inc.*, 208 Cal.App.3d 71, 256 Cal. Rptr. 71, 74 (1989) (holding that the originator of defamatory matter is liable for each repetition of the defamatory matter by a second party if it was reasonably foreseeable that the repetition would occur); *Swafford v. Memphis Individual Practice Ass'n*, No. 02A01–9612–CV–00311, 1998 WL 281935, at *13 (Tenn.Ct. App. June 2, 1998) (holding that a separate limitations period attaches to each publication by a national practitioner's data bank about a doctor's disciplinary record).

Friedler faces two difficulties, however, in pursuing his "republication" theory. One is that Friedler did not timely raise the issue below. Equitable correctly points out that Friedler had multiple opportunities to articulate this argument over an 11–month period but failed to do so. Friedler first attempted to present this argument when he sought to file a supplemental response in opposition to Equitable's second motion to dismiss. He maintained that he had had an inadequate opportunity to research his case. Unmoved by Friedler's excuses, the district court denied Friedler's motion, pointing out that the court had granted him two extensions for filing his response. The district court, therefore, did not address Friedler's theory that each transmission of defamatory information in a data bank constitutes a new publication for which the original source of the material is liable.

"This court has repeatedly held that it will not consider arguments ·raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *United States v. Ninety–Three Firearms*, 330 F.3d 414, 424

(6th Cir.2003) (internal quotation marks and citation omitted). We believe that this well-settled rule is equally applicable here, where an argument is first raised in a motion to file a supplemental response, but is properly denied and therefore not considered by the district court. *See also Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 648 (6th Cir.1996) (holding that this court will not address issues that are not *ruled on* by the district court unless injustice might otherwise result). As analyzed below, the Ohio courts have refused to modify the first publication rule under analogous circumstances. We thus find no "plain miscarriage of justice" in refusing to consider Friedler's argument for the first time on appeal.

■ This brings up Friedler's second difficulty, which is that Ohio case law is solidly against his republication argument. In *Guccione v. Hustler Magazine*, 64 Ohio Misc. 59, 413 N.E.2d 860 (1978), the Court of Common Pleas addressed whether the statute of limitations began to run from the time the magazine containing the allegedly defamatory material was first mailed to subscribers and news dealers, or whether it ran from a later mailing of reserved copies of the magazine. *Id.* at 861. Guccione argued that the one-year statute of limitations should start anew whenever a publication is reprinted or redistributed. The court rejected this argument, explaining:

> A cause of action accrues when the right to prosecute it begins. . . . To adopt the accrual rule advocated by plaintiff would result in an interpretation of [Ohio Revised Code] 2305.11 in which the statute of limitations would never toll in libel cases so long as there were available issues of the alleged libelous publications.

*Id., see also Morgan v. Hustler Magazine, Inc.*, 653 F.Supp. 711, 717 (N.D.Ohio 1987)

(adopting the *Guccione* holding in a case brought in federal court); *Lyons v. Farmers Ins. Group,* 67 Ohio App.3d 448, 587 N.E.2d 362, 363–64 (1990) (rejecting Lyons's attempt to adopt the discovery rule for determining when the statute of limitations begins to run in slander actions and reaffirming that the statute of limitations "begin[s] running from the time the alleged slanderer's words were spoken, whether the plaintiff had knowledge or not"); *Rosenbaum v. Chronicle Telegram,* Nos. 01CA0079896, 01 CA007908, 2002 WL 31890101, at *5 (Ohio App. 9 Dist. Dec. 31, 2002) (rejecting a continuing-violation theory in defamation cases and refusing to hold that the statute of limitations started to run from the republication of certain articles). Applying the above authorities to the present case, NASD's action in sending the allegedly defamatory material on a date subsequent to its first publication did not restart the statute of limitations.

Similarly, in *Wendover Road Property Owners Ass'n v. Kornicks,* 28 Ohio App.3d 101, 502 N.E.2d 226 (1985), a property-owners association filed an Affidavit of Facts about Kornicks, a property owner in their neighborhood, with the Cuyahoga County Recorder. The affidavit stated that Kornicks had refused to monetarily contribute to certain association-sponsored road improvements. Five years later, when Kornicks was in the process of selling his property, a title search uncovered the Affidavit of Facts. *Id.* at 228. Kornicks sued the association, alleging that his title was deliberately and maliciously slandered by the affidavit. *Id.* The court held that the statute of limitations began to run from the time the affidavit was filed with the County Recorder, not when the recorder provided the information to the title-search company five years later. *Id.* at 229; *see also Fleming v. Ohio Atty. General,* No. 02AP–240, 2002 WL 31898085, at *3 (Ohio App. 10 Dist. Dec. 31, 2002) (rejecting the plaintiff's argument that his cause of action for defamation accrued anew each day that a common pleas court record containing a judgment lien filed against him was available to the public). Again, *Wendover* and *Fleming* indicate that the statute of limitations begins to run when a record is first filed in a data bank, and not from when the record is transmitted to an inquiring data-bank customer.

Based upon the foregoing, Friedler's argument would likely fall on deaf ears in the Ohio courts. The Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers. In the face of the Ohio authority discussed above, we believe that Friedler had little chance of changing Ohio law by relying on three contrary cases from other jurisdictions. He had even less of a chance of doing so in the federal district court, where the cause of action was based upon state law. *See Bailey v. V&O Press Co., Inc.,* 770 F.2d 601, 606 (6th Cir.1985) (approving the district court's decision not to extend Ohio law on a state-law-based negligence claim in the absence of any authoritative Ohio interpretations).

**B. The district court did not abuse its discretion in awarding sanctions against Friedler**

We review a district court's imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure under the "abuse-of-discretion" standard. *Tahfs v. Proctor,* 316 F.3d 584, 593 (6th Cir. 2003). An abuse of discretion will not be found unless we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal

quotation marks and citation omitted). In the present case, the district court awarded Rule 11 sanctions because Friedler's counsel pursued a claim that he should have known was unsupported by existing law and he made no argument to change it. Friedler's counsel also took substantial liberties in his characterization of the state-court proceedings to the district judge.

Rule 11(b) provides in pertinent part that an attorney, in presenting a pleading, written motion, or other paper to the court

is certifying that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1) [the paper] is not being presented for any improper purpose, such as to harass, or cause unnecessary delay, or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support. . . .

Rule 11 sanctions are appropriate where the district court determines that an attorney's conduct is not reasonable under the circumstances. *Tahfs*, 316 F.3d at 594.

■ We find no error in the district court's determination that the conduct of Friedler's counsel was unreasonable from the outset. A reasonable attorney would have researched the applicable statute-of-limitations period for a defamation cause of action prior to filing a complaint. Even if the research of Friedler's counsel had failed to alert him to the fact that his claim was time-barred, Equitable's filing of not one, but two, motions to dismiss on statute-of-limitations grounds should have ended this litigation. In other words, Friedler has been on notice of an incurable defect in his complaint since November of 2001, but he has persisted in this litigation. Friedler also failed to present evidentiary support to show that Equitable was in any way responsible for NASD's transmission of the allegedly defamatory matter to Allstate.

The district court appeared to be equally disturbed by Friedler's characterization of the rulings of Judge Koch of the Cuyahoga Court of Common Pleas. In Friedler's response to Equitable's motion to dismiss in federal court, Friedler drew unsupportable inferences from Judge Koch's marginal entry order denying Equitable's motion to dismiss in the Court of Common Pleas. The sole judgment entry on the docket reads:

Defendant's Motion to Dismiss is denied. Plaintiff's Motion for Leave to Amend Complaint is well taken and granted. Plaintiff shall have until 01–21–02 in which to amend its complaint.

Based upon this order, Friedler's counsel made the following statements in papers presented to the district court: (1) "Defendant filed a Motion to Dismiss [in the Court of Common Pleas] alleging that Plaintiff's claim was time barred. On January 3, 2002, the trial judge disagreed and Defendant's Motion . . . was denied."; (2) "the Cuyahoga County Court of Common Pleas has already ruled that Plaintiff's claim is *not* time barred." (emphasis in original); (3) "Judge Kilbane–Koch agreed that Mr. Friedler's cause of action has merit and should proceed."

The more plausible inference from the chronology of the motions filed by both parties is that Judge Koch believed that Equitable's motion to dismiss was premature, given that Friedler was seeking to amend his complaint to add NASD as a

defendant. At most Judge Koch's ruling was ambiguous, and she surely did not explicitly rule that Friedler's claim was timely filed or that it had merit and should proceed. The district court believed that Friedler's erroneous assertions regarding Judge Koch's ruling was an attempt to deceive the court. Under the circumstances, we cannot say that the district court abused its discretion in sanctioning Friedler's counsel under Rule 11.

### C. Equitable's motion for sanctions regarding this appeal

█ Equitable formally requests further sanctions for Friedler's filing of a frivolous appeal. It relies on Rule 38 of the Federal Rules of Appellate Procedure, which provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

"[A]n appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 465 (6th Cir.2003) (internal citation omitted). Friedler's claim appeared frivolous on its face in the state and federal district court proceedings because, despite having numerous opportunities to do so, he failed to present a colorable argument to change the Ohio courts' interpretation of when the statute of limitations accrues for defamation actions. On appeal, however, Friedler finally articulates a legal argument that Ohio adopt the republication theory, as espoused by the three authorities he cites, for the "data bank" type of case presented here. We decline, for the reasons stated above, to create a new rule of law for the state of Ohio, but find that his argument is sufficiently nonfrivolous to prevent further sanctions pursuant to Rule 38.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court, but we **DENY** Equitable's motion for additional sanctions under Rule 38.