[Cite as *Spitzer v. Knapp*, 2019-Ohio-2701.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JOEL M. SPITZER | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 19 CAE 01 0006 |
| LISA KNAPP | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Delaware County
                              Court of Common Pleas, Case No. 2017-
                              CVH-09-0571

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       July 1, 2019

APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

LUTHER LIGGETT                          GARY REEVE
604 E. Rich Street                      5354 Cemetery Road
Columbus, OH 43215                      Hilliard, OH 43026

*Gwin, P.J.*

{¶1}   Appellant appeals the judgment entry of the Delaware County Common Pleas Court granting summary judgment to appellee.

*Facts & Procedural History*

{¶2}   On September 20, 2017, appellant Joel Spitzer filed a complaint against appellee Lisa Knapp, Todd Daviso, and Susan Tobias for defamation, civil conspiracy, invasion of privacy, libel, intimidation, intentional infliction of emotional distress, and for equitable relief.  The trial court granted Susan Tobias' motion to dismiss on December 11, 2017.  Appellant dismissed Todd Daviso on January 30, 2018.  The complaint alleged that, at all relevant times, appellant served as elected Fiscal Officer of Orange Township in Delaware Ohio and appellee served as an elected trustee of Orange Township in Delaware Ohio.

{¶3}   Appellant filed an amended complaint against only appellee Lisa Knapp on March 5, 2018.  The amended complaint contained claims for defamation, tortious interference with contract, and intentional infliction of emotional distress.  Appellant alleges that, "within the last 12 months, [appellee] has published false statements with malice, including on her social media pages, alleging among other things that [appellant] engaged in criminal conduct."  In the amended complaint, appellant lists three "examples" of appellee's false and malicious statements.  Appellant first avers the following currently appears on appellee's website "Re-Elect Lisa Knapp Orange Township Trustee":

{¶4}   Joel M. Spitzer's Record

Mr. Spitzer has made numerous provably false and misleading statements

to the media about me which have been published to my detriment.  He has

also made numerous false statements to residents and others. When deciding who is telling the truth, a person with a criminal record, several arrests, and time served may be less credible than others. That person would be Joel M. Spitzer, who has at least 40 cases and reports in various jurisdictions throughout Ohio. These include: the suicide attempt report from 2/2014 where Spitzer is alleged to have run across the street in front of moving vehicles, and the fight report from 6/2013 where Spitzer is alleged by the Olentangy High School principal to have threatened to punch Olentangy School Board member Julie Wagner Feasel's husband John Feasel, because Spitzer's daughter was left off a list. Also, to date, Mr. Spitzer is the only Orange Township official to have been arrested at Orange Township Hall during his term in office. In this case, he was there at 2:33 a.m. with a female friend and his blood alcohol level was tested at .04. See stories below: Township Official Pleads Not Guilty After Arrest (*click here for Dispatch story)*; Spitzer Pleads Not Guilty to Obstruction (*click here for ThisWeek story)*; Restraining order issued on Spitzer on behalf of same female friend 4 years later (*click here for Dispatch Story)*. Mr. Spitzer even felt it was necessary, several years later, to discuss his arrest at township hall during a public trustee meeting. To see his statements on video, *(click here).* You can access the dockets for many of these situations online on the following sites. Don't forget to search under "Joel Plumley" (his former name) as well. Crawford County Clerk. Franklin County Clerk of Courts. Delaware County Clerk of Courts. Delaware County Municipal

Court. Marion Municipal Court. Marysville Municipal Court. Mansfield Municipal Court. Clark County.

**{¶5}** Appellant next lists as a "second example" of appellee's "false and malicious statements" appearing on appellee's website "Residents for Lisa Knapp Orange Township Trustee" as follows:

October 13, 2017 - It's time to bring the curtain down on the "Joel Spitzer Circus" on Nov. 7th. * * * For 6 years Quigley & Taranto have provided the 2 votes necessary to ensure the fiscal office's massive lack of internal controls & transparency which * * * has resulted in undetected felony theft by our zoning inspector, and much more * * *.

**{¶6}** Appellant avers that on September 14, 2017, appellee published the false statement that appellant provided "created reports," insinuating that appellant illegally fabricated the financial information contained in the reports, constituting criminal fraud. Appellant's complaint states appellee "further published defamatory statements by sending false statements concerning appellant in emails and other communications to various news media, to incite derivative false publications." Appellant alleges appellee's published statements constitute negligence and constitute defamation per se and/or defamation per quod by alleging that appellant engaged in criminal conduct.

**{¶7}** On March 19, 2018, appellee filed a motion to dismiss appellant's amended complaint pursuant to Civil Rule 12(B)(6) for failure to state a claim. Appellant filed a memo contra to appellee's motion to dismiss and appellee filed a reply brief. The trial court issued a decision on April 30, 2018 on appellee's Civil Rule 12(B)(6) motion to dismiss. The trial court denied the motion as to the "Joel M. Spitzer's Record" statement.

The trial court granted appellee's motion as to the "Joel Spitzer Circus" statement, finding the statement does not allege criminal conduct on appellant's part. The trial court further found the "created reports" statement is not defamatory because of the innocent construction rule and found the vague statement that appellee has "for many years, written false statements about him" does not state a claim. The trial court also dismissed appellant's tortious interference and intentional infliction of emotional distress claims. Appellee filed an answer to the amended complaint on May 17, 2018.

{¶8} Appellant filed a motion to compel discovery on May 17, 2018. On June 28, 2018, the trial court ruled on appellant's motion to compel. Appellant sought to compel appellee to provide all blogs or internet communication after January 1, 2017, including posts and messages "not currently visible to the general public." Appellant argued he has a right to this material pursuant to R.C. 2317.48. The trial court ordered appellee to turn over the documents under seal for an "in camera" inspection.

{¶9} Appellee filed a motion for summary judgment on August 24, 2018. Appellee attached her affidavit to her motion for summary judgment. She avers that she printed out the dates of the posting of the blog entry at issue in the amended complaint, "Joel Spitzer's Record," and the printout, attached as Exhibit 1 to the affidavit, shows that October 30, 2015 is the accurate date upon which the entry was posted, and it was not altered after that date. Appellee states she attached as Exhibit 2 to the affidavit the information she used in her blog statement that appellant had a criminal record, had served jail time, and had over 40 cases and reports in jurisdictions throughout Ohio and the information was obtained from reliable public sources that she reasonably believed were accurate and reliable. Appellee attached as Exhibit 3 to the affidavit the information

she used in her blog statement that appellant had been the subject of a suicide attempt in February of 2014 and it is a public record of the Delaware County Sheriff's Office that she reasonably believed to be accurate and reliable. Appellee attached as Exhibit 4 to her affidavit the information she used for her blog statement that appellant had been in a physical altercation with the husband of an Olentangy Schools Board member in June of 2013 and it is a public record of the Delaware County Sheriff's Office that she reasonably believed to be accurate and reliable. Appellant attached as Exhibit 5 to her affidavit the information she used for her blog statement that appellant had been arrested at the Orange Township Hall with a heightened blood alcohol level and attached as Exhibit 6 the information she used for her statement that appellant discussed the matter at a public meeting. Appellee avers the information was from the Columbus Dispatch and the information was accurate and reliable.

{¶10} On August 31, 2018, appellant moved, pursuant to Civil Rule 56(F), for an extension to respond to appellee's motion for summary judgment because discovery had not yet concluded. The trial court issued a decision on October 15, 2018, granting appellant's motion in part, giving him until October 26, 2018 to respond to the motion for summary judgment. However, the trial court also found that the discovery provided and filed in-camera shall not be considered in addressing the pending motion.

{¶11} Appellant filed his memorandum contra to appellee's motion for summary judgment on October 26, 2018. Attached to appellant's memorandum in response is his affidavit. Appellant stated a true and accurate example of appellee's false and malicious statements alleging criminal conduct appeared on her website, as stated in the amended complaint, and remained there until May 2018 when appellee removed them. Appellant

also avers appellee implies he is engaged in theft with innuendo and by questions on Facebook posts. Appellant quotes several Facebook posts by appellee in his affidavit.

{¶12} Appellee filed a reply in support of her motion for summary judgment on November 2, 2018.

{¶13} The trial court issued a decision on appellee's motion on December 20, 2018. The trial court first noted that the remaining claims for defamation include the following statements made by appellee: (1) Spitzer has a criminal record, several arrests, and time served * * * with over 40 cases and reports in various jurisdictions throughout Ohio; (2) there was a suicide attempt report by Spitzer in February of 2014 where he was alleged to have run in front of moving vehicles; (3) there was a report of a fight between Spitzer and people involved with the Olentangy School Board in June of 2013; (4) Spitzer was arrested at Orange Township Hall with a heightened blood alcohol level, and evidently felt it was necessary to talk publicly about it years later at a Trustee's meeting; (5) Spitzer is listed as the Defendant in many docket entries in nine listed courts under both his current name and former name (Joel Plumley), and (6) Spitzer's lack of competence at his position as Fiscal Officer allowed felony thefts by others to take place. The trial court stated statements one through five came directly from a website post entitled "Joel Spitzer's Record" posted on October 30, 2015 on appellee's blog and statement six came from the Residents for Lisa Knapp website and was posted on October 13, 2017 in support of the election of trustee candidate Ryan Rivers. The trial court found statement six was the only statement initially published within the one-year statute of limitations.

{¶14} Though appellant did not allege the statements as defamatory in his amended complaint, the trial court examined the statements appellant cited in his affidavit as defaming him through innuendo and questions.  As to appellee's statement that appellant has at least 40 cases and reports in various jurisdictions involving appellant throughout Ohio, including a restraining order issued against him, the trial court found that the allegation made by appellee is true, as appellee attached to her affidavit copies of court records which reflect more than 40 cases and reports in various Ohio jurisdictions including at least two ex-parte restraining orders and numerous traffic violations.  As to appellee's post that she has "questioned for 10 years the $140,000/yr payout to a contractor who provides one page invoices * * * Spitzer had no idea what the one page $5,200 invoice was for * * * and he didn't care," the trial court found this was an expression of opinion, and, further, does not imply that appellant is engaged in theft.  Rather, the statement indicates appellee, as a township trustee, is concerned appellant, the fiscal officer, was approving payments to a contractor doing business with the township with inadequate documentation.

{¶15}  As to appellee's Facebook post that she has a "clean record and has never been arrested multiple times or spent time in jail like Mr. Spitzer has," the trial court found the records provided by appellee in her summary judgment affidavit show appellant has a number of arrests and he spent 20 days in jail.  Regarding three Facebook posts by appellee about lost checks, needing someone to review the bank statements to check Spitzer's work, and Spitzer paying out millions in money without any verification, the trial court found the posts suggest that appellant is doing a poor job of being the fiscal officer for the township, which is protected opinion.  As to appellee's post on her website about

her revealing theft in office, fraud, inappropriate purchases, lack of internal controls, and numerous other financial issues, the trial court found the former Orange Township Zoning Inspector pled guilty to theft in office and appellee does not imply that appellant stole anything, but asserts that appellant has failed to install sufficient internal controls to prevent fraud and thefts from occurring.

{¶16} Regarding appellee's comments that Spitzer cannot be trusted to tell the truth because he has a history of making false statements, the trial court found appellee, as a public official, accuses appellant, another public official, of having a history of making false statements and this is protected by the First Amendment. As to the two Facebook posts in which appellee states appellant, as the fiscal officer, had no idea the zoning inspector was stealing cash and holding onto zoning checks, the trial court found these posts are protected opinion by a fellow public official on the conduct of appellant as the fiscal officer. With respect to appellant's claim that appellee falsely reported he had attempted suicide in 2014, the trial court found that appellant did not present any evidence to dispute the report by the Delaware County Sheriff's Office.

{¶17} The trial court granted appellee's motion for summary judgment, finding the statements she made were either true or protected opinion. Further, that appellee is entitled to summary judgment on all her posts made more than one year before the complaint was initiated by appellant because of the one-year statute of limitations. On January 3, 2019, the trial court issued a journal entry stating its December 20, 2018 decision granting summary judgment in favor of appellee and against appellant is a final appealable order.

{¶18} Appellant appeals the judgment entry of the Delaware County Common Pleas Court and assigns the following as error:

{¶19} "I. THE TRIAL COURT ERRED IN WEIGHING THE EVIDENCE ON SUMMARY JUDGMENT WHEN THE COMPLAINT INCLUDED A JURY DEMAND.

{¶20} "II. THE TRIAL COURT ERRED IN DISMISSING CLAIMS AND LIMITING DISCOVERY, IMPROPERLY NARROWING THE CLAIMS AS A MATTER OF LAW."

*Summary Judgment Standard*

{¶21} Civ.R. 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶22} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶23} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶24} In his first assignment of error, appellant argues the trial court improperly decided factual disputes reserved for the trier of fact, i.e., the jury, since appellant filed a jury demand. Appellant also contends the trial court erred in weighing the evidence on summary judgment.

*Statute of Limitations*

{¶25} The trial court in this case granted summary judgment as to several statements appellant alleged were defamatory because the allegedly defamatory statements were not published within the one-year statute of limitations. Appellant argues

that the trial court improperly granted summary judgment on this basis.   Appellant contends the "continuing tort theory" applies in this case, such that while the original posting may be outside the statute of limitations, the fact that appellee maintains and has not removed the posts and derivative publications means the statute of limitations does not bar his claims for defamation because the limitations period does not begin to run until the tortious conduct ends.

{¶26} The tort of defamation has a one-year statute of limitations.   R.C. 2305.11(A).  Appellant cites cases dealing with negligence and trespass in support of his contention that the "continuing tort theory" applies in this case.  However, courts have consistently held that Ohio has not adopted a "continuing tort theory" or "continuing publication" rule for defamation cases.  *Smith v. Nat'l Western Life*, 8th Dist. Cuyahoga No. 104898, 2017-Ohio-4184 (stating Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations); *Rosenbaum v. Chronicle Telegram*, 9th Dist. Lorain Nos 01CA0079896, 01CA007908, 2002-Ohio-7319 (declining to adopt the continuing tort theory in a defamation case and stating a cause of action for defamation accrues immediately upon the occurrence of the tortious act and is not appropriate for the continuing violation exception); *Fleming v. Ohio Atty. Gen.*, 10th Dist. Franklin No. 02AP-240, 2002-Ohio-7352 (stating the court would not embrace the plaintiff's continuing defamation theory); *Krowiak v. BWXT Nuclear Operations Group, Inc.*, N.D. Ohio No. 1:18 CV 629, 2018 WL 5312463 (rejecting the re-publication theory of the plaintiff and finding even if the defendant continued to disseminate these statements to new consumers, this would not re-start the limitations period); *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx.

50 (6th Cir. 2003) (rejecting plaintiff's theory that the original source of the defamatory statements is liable each time the information is re-published to a new party and stating Ohio case law is solidly against the plaintiff's re-publication argument). "Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003).

**{¶27}** While appellant argues this Court should utilize the date of the discovery of the defamatory statement in order to start the running of the statute of limitations because otherwise he is left with no remedy, this Court has previously rejected that argument and held that the date of publication, and not the discovery thereof, is the time for accrual of a defamation action. *Lewis v. Delaware Cty. Joint Vocational School Dist.*, 5th Dist. Delaware No. 04CAH 08-060, 2005-Ohio-2550; see also *Stainbrook v. Ohio Secy. of State*, 10th Dist. Franklin No. 16AP-314, 2017-Ohio-1526 (holding a cause of action for defamation accrues upon publication of the complained manner); *Friedler v. Equitable Life Assur. Soc. Of U.S.*, 86 F. Appx. 50 (6th Cir. 2003) (holding the statute of limitations begins to run when the statements are first published regardless of the aggrieved party's knowledge of them).

**{¶28}** The trial court found the following allegedly defamatory statements made by appellee are barred by the one-year statute of limitations: (1) appellant has made numerous provably false and misleading statements to the media about me (appellee) which have been published to my detriment and has made numerous false statements to residents and others. When deciding who is telling the truth, a person with a criminal

record, several arrests, and time served may be less credible than others.  That person would be appellant, who has at least 40 cases and reports in various jurisdictions throughout Ohio, including a restraining order issued against him; (2) there was a suicide attempt report by appellant in February of 2014 where he was alleged to have run in front of moving vehicles; (3) there was a report of a fight between appellant and people involved with the Olentangy School Board in June of 2013; (4) appellant was arrested at Orange Township Hall with a heightened blood alcohol level, and evidently felt it was necessary to talk publicly about it years later at a Trustee's meeting; and (5) appellant is listed as defendant in many docket entries in nine listed courts under both his current name and former name (Joel Plumley).

{¶29}  Upon review, we find the five statements came directly from appellee's blog dated October of 2015 and appellant has not presented any evidence that the statements have been altered since the date of publication in 2015.  Even assuming appellee continued to disseminate these statements, the limitations period is not restarted each time they are re-published to a new party.  Accordingly, these allegedly defamatory statements are barred by the statute of limitations.  We decline to adopt appellant's "continuing publication" or "continuing tort" theory.  Thus, appellee is entitled to summary judgment as to these statements.

{¶30}  Additionally, the allegedly defamatory statements that appellant cites to and attaches to his affidavit in opposition to appellee's motion for summary judgment do not have dates on them, nor does appellant swear to any date certain upon which they were posted, other than his averment that the statements were "recent."  Thus, appellant has

failed to establish a date of publication for these statements within the applicable statute of limitations.

{¶31} To the extent the trial court granted appellee summary judgment based upon the statute of limitations, we concur with the trial court.

*Opinion*

{¶32} To survive a summary judgment on his defamation claim, appellant was required to establish that appellee made a statement of fact about appellant. A statement is not defamatory if it is a statement of opinion, because expressions of opinion are generally protected under the Ohio Constitution. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995).

{¶33} Appellant argues the trial court improperly granted summary judgment because whether a statement constitutes an opinion is a question reserved for the fact-finder. However, the Ohio Supreme Court has consistently held that "the determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995); *Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986); *Wampler v. Higgins*, 93 Ohio St.3d 111, 752 N.E.2d 962 (2001).

{¶34} In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. *Id.* Consideration of the totality of the circumstances involves at least four factors: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement and (4) the broader context in which the statement appeared. *Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986). The analysis of these factors is not a bright-line test

and the weight to be given to any one factor under this inquiry will vary depending on the circumstances of each case. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182 (1995).

{¶35} The trial court decided, as a matter of law, that the following statements were expressions of opinion as opposed to statements of fact and granted summary judgment in favor of appellee on this basis as to these statements: appellee's post that she has "questioned for 10 years the $140,000/yr payout to a contractor who provides one page invoices * * * Spitzer had no idea what the one page $5,200 invoice was for * * * and he didn't care"; three Facebook posts by appellee about lost or reissued checks, needing someone to review the bank statements to check appellant's work, and appellant paying out millions in money without any verification; two Facebook posts appellee made in which appellee states that appellant, as the fiscal officer, had no idea the zoning inspector was stealing and holding onto zoning checks; appellee's comment that appellant cannot be trusted to tell the truth because he has a history of making false statements; and the statement on appellee's website that appellant's lack of competence at his position as Fiscal Officer allowed felony thefts by others to take place.

{¶36} Upon a review of the totality of the circumstances and the four factors as detailed above, we find the trial court did not commit error in its determination that the statements were expressions of opinion and thus not defamatory as a matter of law. Appellee's Facebook post about the invoices is part of a discussion between herself and other Facebook users, and is the opinion of appellee, as a township trustee, that appellant should not have approved payments to a contractor doing business with the township without sufficient documentation that appellant and was not doing a good job in his

position as fiscal officer. The three Facebook posts about lost checks and checking appellant's work are similarly discussions between appellee and other Facebook users and are appellee's opinion suggesting or implying that appellant was doing a poor job of being a fiscal officer for the township. Appellee's two Facebook posts that appellant had no idea the zoning inspector was stealing and holding onto checks is appellee's opinion that appellant is doing a poor job as the township fiscal officer because theft by another employee occurred during appellant's tenure as fiscal officer.

{¶37} As to the comment by appellee that appellant cannot be trusted to tell the truth because he has a history of false statements, this statement was made when appellee was commenting on two articles from the Columbus Dispatch, one in 2012 and one in 2013, regarding legal cases appellant was previously involved in, and it was appellee's opinion about appellant's previous legal cases, the statements made in them, and how this impacted the audit of the township appellant had recently completed. Statements made about public officials are constitutionally protected when the statements concern "anything which might touch on an official's fitness for office." *Soke v. Plain Dealer*, 69 Ohio St.3d 395, 632 N.E.2d 1282 (1994). With regards to the statement on appellee's website in support of trustee candidate Ryan Rivers that appellant's lack of competence in his position allowed felony theft by others to take place, the statement does not imply that appellant stole anything, but is appellee's opinion that appellant failed to install sufficient internal controls to prevent the zoning inspector from committing theft in office.

{¶38} Based on the foregoing, we find the trial court did not commit error in granting summary judgment to appellee based upon the fact that the above allegedly defamatory statements are expressions of opinion.

*Truth/Actual Malice*

{¶39} The trial court granted appellee summary judgment on several statements appellant alleges are defamatory because the statements were true. In order to survive a motion for summary judgment on a claim for defamation, appellant was required to establish, among other elements, that appellee made a false statement of fact. *Davis v. Johnson*, 5th Dist. Richland No. 07 CA 40, 2007-Ohio-6567. Truth is a complete defense to a claim for defamation. *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 662 N.E.2d 1074 (1996).

{¶40} Further, this case involves alleged defamation with regards to a public official. The United States Supreme Court held that the U.S. Constitution requires that a public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Actual malice is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991). The phrase "reckless disregard" applies when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity" or when the publisher "in face entertained serious doubts as to the truth of this publication." *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1969). To determine whether a statement was made with actual malice, on summary judgment, the court must consider

all the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to appellant to determine whether a reasonable jury could find actual malice with convincing clarity.

{¶41} The trial court found the following allegedly defamatory statements were true and/or not made with actual malice: appellee's statement that appellant has at least 40 cases and reports in various jurisdictions throughout Ohio, including a restraining order against him; appellee's statement that she has a clean record and has never been arrested multiple times or spent time in jail like appellant has; appellee's post on her website about her revealing theft in office, inappropriate purchases, and lack of internal controls; and appellee's comment that there is a suicide attempt report from 2014 where appellant is alleged to have run across the street in front of moving vehicles.

{¶42} Upon review, we agree with the trial court's determination. As to appellee's statement regarding forty cases and reports in various jurisdictions throughout Ohio, including a restraining order against him, appellee attached to her affidavit copies of court records, which reflect more than forty cases and reports in various Ohio jurisdictions involving appellant, including at least two ex parte restraining orders. Appellant has not set forth any evidence to dispute these records. As to appellee's Facebook post that she has a "clean record" and has not been arrested multiple times or spent time in jail like appellant has, appellee attached to her affidavit court records to demonstrate appellant has a number of arrests and he spent twenty days in jail. Appellant has not set forth any evidence to dispute these records. With regards to appellee's post on her website about revealing theft in office and lack of internal controls, appellee set forth evidence that the former Orange County Zoning Inspector pled guilty to theft in office. Appellant has not

set forth any evidence to dispute this evidence. Finally, appellant has not set forth any evidence to dispute the report by the Delaware County Sheriff's Office regarding the report in 2014. Thus, no genuine issue of material fact exists. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact. Appellant has failed to produce any evidence of a published falsehood with regard to the above-listed statements. Accordingly, the trial court did not commit error in granting summary judgment based upon truth and/or lack of actual malice.

**{¶43}** Based on the foregoing, appellant's first assignment of error is overruled.

II.

**{¶44}** In his second assignment of error, appellant contends the trial court erred in dismissing claims and limiting discovery, improperly narrowing claims.

*Motion to Compel*

**{¶45}** Specifically, appellant argues the trial court erred in denying his motion to compel because he was entitled to compel appellee to provide him all blogs and/or internet communication she made after January 1, 2017, including posts and messages. This Court may not reverse a trial court's decision on a motion to compel discovery absent an abuse of discretion. *State ex rel. The V. Companies v. Marshall Co. Auditor*, 81 Ohio St.3d 467, 692 N.E.2d 198 (1998). The Ohio Supreme Court has frequently defined the abuse of discretion standard as implying the court's attitude was unreasonable, arbitrary, or unconscionable. *Id.*

**{¶46}** Appellant argues the trial court's denial of his motion to compel thwarted him in determining where the allegedly defamatory statements by appellee were re-

published and referenced through various media. Appellant contends these re-publications would revive his defamation claims, as they would have occurred within the statute of limitations and he was entitled to discover this information to address his continuing tort theory. Appellant thus contends the granting of the summary judgment and dismissal of his claims was premature without this discovery.

{¶47} Based upon our analysis in Assignment of Error I that courts have consistently held that Ohio has not adopted a "continuing tort theory" or "continuing publication" rule for defamation cases and our declining to apply such a theory in this case, we find the trial court did not abuse its discretion in denying appellant's motion to compel. Any re-publication appellant may have discovered would not have revived his defamation claims as the first date of publication, not the discovery thereof or date of re-publication, is the time for accrual of a defamation action. Thus, the granting of the summary judgment and dismissal of appellant's claims were not premature. A complaint can be dismissed when on its face it conclusively indicates that the action is time-barred under the applicable statute of limitations. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814.

*Totality of the Circumstances*

{¶48} In his second assignment of error, appellant also argues the trial court erred in granting summary judgment because the factfinder, not the court, must consider the totality of the circumstances to determine if the allegedly defamatory statements are statements of opinion. Based upon our discussion and analysis in Assignment of Error I, we find appellant's argument is not well-taken.

*Defamation Per Quod/Defamation Per Se*

{¶49} In the final portion of his argument in the second assignment of error, appellant contends the trial court improperly granted summary judgment because the trial court improperly focused only on defamation per se and appellant submitted sufficient evidence to create a genuine issue of material fact as to his theory of defamation per quod.

{¶50} To survive a summary judgment on his defamation claim, appellant was required to establish five elements necessary to a claim for defamation: (1) a false and defamatory statement of fact; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) which was either defamatory per se or caused special harm to the plaintiff. *Davis v. Johnson*, 5th Dist. Richland No. 07 CA 40, 2007-Ohio-6567.

{¶51} There are two types of defamation, defamation per se and defamation per quod. For a communication to be defamatory per se, it must be actionable upon the very words spoken without regard to the interpretation of the listener, i.e., it is actionable on its face. *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Contr. Trades* Council, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). A statement is defamation per se, on its face, when it reflects upon his or her character in such a manner that would cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *Id.* Unless a privilege applies, damages and fault are generally presumed to exist if a statement is defamatory per se. *Wampler v. Higgins*, 93 Ohio St.3d 111, 752 N.E.2d 962 (2001). Defamation per quod refer to a communication that is capable of being interpreted as defamatory, i.e., it must be determined by the interpretation of the

listener, through innuendo, as being either innocent or damaging. *Northeast Ohio Elite Gymnastics Training Center v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484 (9th Dist.). For defamation per quod, special damages must be pled and proven. *Id.* Special damages are of such a nature that they do not follow as a necessary consequence of the complained injury. *Id.* "Special damages are those direct financial losses resulting from the plaintiff's impaired reputation." *Becker v. Toulmin*, 165 Ohio St. 549, 138 N.E.2d 391 (1956); *Sky v. Westhuizen*, 5th Dist. Stark No. 2018 CA 00127, 2019-Ohio-1960.

{¶52} In his amended complaint, appellant alleges the published false statements of appellee constitute defamation per quod because the statements implied that appellant engaged in criminal conduct. Further, that as a direct result of appellee's actions, appellant had been damaged in excess of $25,000. In his affidavit, appellant states that appellee, through innuendo, alleges he is involved in criminal activity with her various defamatory statements. However, in his complaint and/or affidavit, appellant has not alleged any special damages or direct financial losses resulting from his impaired reputation. Civil Rule 9(G) provides that when items of special damage are claimed, they shall be specifically stated. Appellant alleged no financial loss or other special damages sufficient to overcome a summary judgment motion. Accordingly, the trial court did not err in granting summary judgment to appellee on claims for defamation per quod as appellant cannot maintain a defamation per quod claim without pleading special damages. See *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013; *Peters v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-1048, 2015-Ohio-2668.

{¶53}  Appellant's second assignment of error is overruled.

{¶54}  Based on the foregoing, appellant's assignments of error are overruled.

{¶55}  The judgment entry of the Delaware County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur